**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**FORT PIERCE DIVISION**

ROXANA UMANA,                                    CASE NO. 18-cv-60977-JAL

        Plaintiff,

v.

CITIGROUP, INC.,

        Defendant.
_____/

## MOTION OF DEFENDANT CITIBANK, N.A. TO COMPEL ARBITRATION

Defendant Citibank, N.A., erroneously sued as Citigroup, Inc., ("Citibank"), respectfully files this Motion to Compel Arbitration (the "Motion"), moving for the entry of an order compelling plaintiff Roxana Umana ("Plaintiff") to arbitrate her claims against Citibank pursuant to the terms of the arbitration agreements (the "Arbitration Agreements") contained in the credit card agreements between Citibank and Plaintiff.  Citibank further seeks to stay this case during the pendency of any arbitration.  In support, Citibank states as follows:

### I.       INTRODUCTION AND BACKGROUND

In this case, Plaintiff contends that Citibank purportedly violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), and the Florida Consumer Collection Practices Act, Florida Statutes sections 559.55-559.785 (the "FCCPA"), based on alleged telephone calls placed in relation to a "debt" Plaintiff owes to Citibank.  Plaintiff's "debts" actually consist of three credit card accounts Citibank issued to her (collectively, the "Accounts"), all of which are subject to the Arbitration Agreements contained in the terms and

conditions governing the Accounts.  As a result, and regardless of the merits (or lack thereof), Plaintiff's claims are subject to the Arbitration Agreements and thus must be arbitrated.

As demonstrated below, the Arbitration Agreements are valid and enforceable agreements to arbitrate under both the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), and South Dakota law (which applies here pursuant to the choice-of-law provision in the Accounts' terms and conditions) and completely encompass the claims in this lawsuit.  By their terms, the Arbitration Agreements broadly encompass "any claim, dispute or controversy" between Plaintiff and Citibank "arising from or relating to" the Accounts and/or Plaintiff's relationship with Citibank.  The Arbitration Agreements also expressly require that they be enforced pursuant to the FAA.  Importantly, the FAA mandates a liberal policy favoring the enforcement of arbitration agreements and requires that any doubts regarding whether a dispute is subject to arbitration be resolved in favor of arbitration.

Federal courts have stated resoundingly that the FAA shall be construed broadly in favor of arbitration.  Recently, in Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612 (2018), the United States Supreme Court again reiterated the FAA mandate that arbitration agreements must be enforced. Following this ruling, in the Middle District of Florida case Ainsworth v. Citibank, N.A., No. 8:17-cv-2206-T-17JSS, ECF No. 23 (June 1, 2018), the court issued a decision enforcing a virtually identical Citibank arbitration agreement in a case involving TCPA and FCCPA claims, similar to those Plaintiff asserts here, stating:  "Just a few days ago, the Supreme Court reaffirmed that federal statute requires the Court to enforce arbitration agreements."  Id. at *1. This is consistent with other decisions from the United States Supreme Court and the Eleventh Circuit that have confirmed that the FAA, which unquestionably applies here, "reflects an

'emphatic federal policy in favor of arbitral dispute resolution'"[1] and that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[2]  Indeed, the decision in <u>AT&T Mobility v. Concepcion</u> makes absolutely clear that arbitration agreements must be enforced as written.  Moreover, as discussed below, courts across the country have repeatedly granted motions to compel arbitration based on the same, or similar, Citibank arbitration agreements as presented here.  The Motion should be granted and the dispute should be submitted to arbitration pursuant to the parties' Arbitration Agreements.

Here, the Arbitration Agreements expressly require that any claims relating to the Accounts or the parties' relationship be arbitrated.  Plaintiff's claims -- that Citibank called Plaintiff's cellphone in an attempt to collect a debt in violation of the TCPA and/or the FCCPA -- clearly relate to the Accounts and arise from her relationship with Citibank.  Thus, Plaintiff's claims fall within the Arbitration Agreements' broad scope.  Based on the foregoing, and as explained in more detail below, the Motion should be granted and Plaintiff directed to submit any claims she believes she has to arbitration pursuant to the parties' Arbitration Agreements.  In addition, this action must be stayed pursuant to Section 3 of the FAA, pending completion of any arbitration.

## II.     STATEMENT OF FACTS

Plaintiff purports to assert claims for violations of the TCPA and FCCPA based on allegations that Citibank improperly called Plaintiff regarding debts owed on the Accounts.  As

---

[1] <u>KPMG LLP v. Cocchi</u>, 565 U.S. 18, 21 (2011) (per curiam) (quoting <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 631 (1985)).

[2] <u>AT&T Mobility v. Concepcion</u>, 563 U.S. 333, 344, 131 S. Ct. 1740, 1748 (2011); <u>see also</u> <u>Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.</u>, 130 S. Ct. 1758, 1774 (2010) (confirming that "[u]nderscoring the consensual nature of private dispute resolution" is the notion that "parties are 'generally free to structure their arbitration agreements as they see fit.'" (citations omitted)); <u>Pendergast v. Sprint Nextel Corp.</u>, 691 F.3d 1224 (11th Cir. 2012) (enforcing <u>Concepcion</u>).

confirmed in the Declaration of Kelly Booth ("Booth Decl.") and Andrew Grayot ("Grayot

Decl."), true and correct copies of which are attached hereto as Exhibits A and B, respectively,

Citibank, a national bank located in South Dakota, is the owner of the Accounts.  (See Booth

Decl. ¶¶ 1, 4; Grayot Decl. ¶¶ 1, 4.)

     The Accounts are subject to written terms and conditions as reflected in the governing

card agreements (the "Card Agreements"), as amended from time to time.  (See Booth Decl. ¶ 6

& Exs. 1, 3; Grayot Decl. ¶ 6 & Ex. 1.)  The Card Agreements governing the Accounts contain a

choice-of-law provision providing for the application of federal law and South Dakota law,

where Citibank is located.  (See, Booth Decl., Ex. 1 at 16 & Ex. 3 at 14; Grayot Decl., Ex. 1 at

18 ("Federal law and the law of South Dakota, where we are located, govern the terms and

enforcement of this Agreement.").)  Critically, the Arbitration Agreements provide that either

party can elect mandatory binding arbitration as follows:

### ARBITRATION

***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.
THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY
BINDING ARBITRATION.  ARBITRATION REPLACES THE RIGHT TO
GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR
PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.  IN
ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR,
NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE
SIMPLER AND MORE LIMITED THAN IN COURT.  THIS
ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL
ARBITRATION ACT (FAA) AND SHALL BE INTERPRETED IN THE
BROADEST WAY THE LAW WILL ALLOW.***

### Covered Claims

- *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").

- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal
theory they're based on or what remedy (damages, or injunctive or declaratory

relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or any affiliated/parent/subsidiary company.

(Grayot Decl., Ex. 1 at 16 (emphasis in original); see also Booth Decl., Ex. 1 at 15 & Ex. 3 at 13.)  The Arbitration Agreements also include terms allowing for the reimbursement and/or advancement of arbitration fees.  (See; Booth Decl., Ex. 1 at 15-16 & Ex. 3 at 13-14; Grayot Decl., Ex. 1 at 18.)  Citibank provided the Card Agreements to Plaintiff.  (See Booth Decl. ¶¶ 6, 9; Grayot Decl. ¶ 6.)  Following receipt of the Card Agreements, Plaintiff used the credit cards for the subject Accounts.  (See Booth Decl. ¶¶ 7, 11 & Exs. 2, 4; Grayot Decl. ¶ 7 & Ex. 2.)

## III.   ARGUMENT

**A.   Plaintiff's Claims Are Subject To Binding Arbitration Pursuant To The Arbitration Agreements And Settled Authority.**

### 1.   Under the FAA, This Court Must Compel Arbitration Pursuant To The Arbitration Agreements' Express Terms.

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").  As the Supreme Court has confirmed, this provision of the FAA "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is matter of contract,'" such that

"courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." <u>AT&T Mobility</u>, 131 S. Ct. at 1745 (citations omitted).[3]

As the Supreme Court further confirmed, the "overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." <u>Id</u>. at 1748.  By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution:  lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." <u>Stolt-Nielsen</u>, 559 U.S. at 685 (citations omitted).  In fact, the Supreme Court recently reaffirmed the broad holding of its prior, seminal decision in <u>AT&T Mobility</u>.  <u>See</u> <u>Epic Sys.</u>, 138 S. Ct. at 1632.

Under the FAA, enforcement of an arbitration agreement entails a "two-step inquiry":  (1) "whether the parties agreed to arbitrate the dispute"; and (2) "whether 'legal constraints external to the parties' agreement foreclosed arbitration.'" <u>Klay v. All Defendants</u>, 389 F.3d 1191, 1200 (11th Cir. 2004) (citation omitted).  The second step concerns whether "Congress has clearly expressed an intention to preclude arbitration of [a] statutory claim." <u>Davis v. S. Energy Homes, Inc.</u>, 305 F.3d 1268, 1273 (11th Cir. 2002) (quotation marks and emphasis omitted).  An arbitration agreement governed by the FAA, like the Arbitration Agreements here, is presumed to be valid and enforceable.  <u>See</u> <u>Palidino v. Avnet Computer Technologies, Inc.</u>, 134 F.3d 1054, 1057 (11th Cir. 1998) (The FAA "creates a presumption in favor of arbitrability").  Furthermore, it is well settled that the party resisting arbitration bears the burden of showing that the

---

[3] The U.S. Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce.  <u>See, e.g.</u>, <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 513 U.S. 265, 277 (1995); <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 401 (1967).  Here, there is no question that the FAA applies to this dispute between Plaintiff, a Florida resident, and Citibank, a national banking association located in Sioux Falls, South Dakota.

arbitration agreement is invalid or does not encompass the claims at issue.  See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000).

Recognizing these principles, numerous courts across the country, including this Court, have upheld and enforced the same Citibank arbitration agreements at issue here.  See, e.g., Kardonick v. Citigroup Inc., No. 1:0-cv-23023-JLK, ECF No. 68 (S.D. Fla. Mar. 25, 2013); Lenkowski v. Citibank, N.A., No. 8:16-cv-03472-CEH-AAS, ECF No. 24 (M.D. Fla. Apr. 18, 2017); Drozdowski v. Citibank, Inc., 2016 WL 4544543 (W.D. Tenn. 2016); McCormick v. Citibank, N.A., 2016 WL 107911 (W.D.N.Y. 2016); Carr v. Citibank, N.A., 2015 WL 9598797 (S.D.N.Y. 2015); Clookey v. Citibank, N.A., 2015 WL 8484514 (N.D.N.Y. 2015); Coppock v. Citigroup, Inc., 2013 WL 1192632 (W.D. Wash. 2013); Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d 1182 (S.D. Cal. 2013); Ackerberg v. Citicorp USA, Inc., 898 F. Supp. 2d 1172 (N.D. Cal. 2012); Orman v. Citigroup, Inc., 2012 WL 4039850 (S.D.N.Y. 2012); Daugherty v. Experian Information Solutions, Inc., 847 F. Supp. 2d 1189 (N.D. Cal. 2012); Eaves-Leonos v. Assurant, Inc., 2008 WL 80173 (W.D. Ky. 2008); Dumanis v. Citibank (South Dakota), N.A., 2007 WL 3253975 (W.D.N.Y. 2007); Lowman v. Citibank (South Dakota), N.A., 2006 WL 6108680 (C.D. Cal. 2006); Ingram v. Citicorp Credit Servs., Inc. (USA), 2005 WL 6518077 (W.D. Tenn. 2005), mag. recomm. adopted at 2005 WL 6518076 (W.D. Tenn. 2005); Sesto v. Nat'l Fin. Sys., Inc., 2005 WL 6519430 (N.D. Ill. 2005); Taylor v. Citibank USA, N.A., 292 F. Supp. 2d 1333 (M.D. Ala. 2003); Barker v. Citibank (South Dakota), N.A., 2003 WL 25943008 (W.D. Tex. 2003); Citibank USA v. Howard, 2002 WL 34573997 (S.D. Miss. 2002).  The result should be the same here because the claims are clearly encompassed by the Arbitration Agreements.

7

## 2.    The Arbitration Agreements Are Valid And Enforceable.

The Card Agreements, which contain the Arbitration Agreements, are expressly governed by a South Dakota choice-of-law provision.  (See Booth Decl., Ex. 1 at 16, Ex. 3 at 14; Grayot Decl., Ex 1 at 18.)  Thus, while the FAA exclusively governs the Arbitration Agreements' enforceability according to their terms, South Dakota law governs the determination of whether a valid agreement to arbitrate exists.  See Cayanan, 928 F. Supp. 2d at 1198 (holding that South Dakota law applies to Citibank's credit card agreement); see also Ackerberg, 898 F. Supp. 2d at 1176-77 (same); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Here, the transaction details for the Accounts reflect Plaintiff's use of the Accounts.  (See Booth Dec. ¶¶ 7, 11 & Exs. 2, 4; Grayot Decl. ¶ 7 & Ex. 2.)  Under South Dakota law, and as numerous district courts have confirmed, Plaintiff's use of the Accounts constitutes her acceptance of the terms of the Card Agreements, including the Arbitration Agreements.  See S.D.C.L. § 54-11-9 ("The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder."); see also Cayanan 928 F. 2d at 1198 (finding that plaintiff agreed to arbitrate claims associated with her accounts when she continued to use each credit account after receiving cardmember agreement); Ventura v. 1st Fin. Bank, 2005 WL 2406029, at *5 (N.D. Cal. 2005) (noting that S.D.C.L. § 54-11-9 "expressly authorizes contract formation by an individual's use of a credit card"); Fedotov v. Peter T. Roach & Assocs., P.C., No. 03-cv-8823(CSH), 2006 WL 692002, at *2 (S.D.N.Y. Mar. 16, 2006) (under South Dakota

law, plaintiff was bound by using cards after receiving card agreements). Moreover, South

Dakota law, like federal law, strongly endorses arbitration. "If there is doubt whether a case

should be resolved by traditional judicial means or by arbitration, arbitration will prevail." Rossi

Fine Jewelers, Inc. v. Gunderson, 648 N.W.2d 812, 814 (S.D. 2002) ("We have consistently

favored the resolution of disputes by arbitration . . . There is an overriding policy favoring

arbitration when a contract provides for it.").

Accordingly, under both the FAA and governing South Dakota law, the Arbitration

Agreements are binding on Plaintiff and must be enforced.

### 3. Plaintiff's Claims Fall Squarely Within the Arbitration Agreements' Scope.

Once it is determined that the parties have entered into an arbitration agreement, as

Citibank and Plaintiff did here, an "order to arbitrate the particular grievance should not be

denied unless it may be said with positive assurance that the arbitration clause is not susceptible

of an interpretation that covers the asserted dispute." AT&T Tech., Inc. v. Commc'ns Workers

of Am., 475 U.S. 643, 650 (1986); see also McDonnell Douglas Fin. Corp. v. Pa. Power & Light

Co., 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that

purport to refer all disputes arising out of a contract to arbitration and "narrow" clauses that limit

arbitration to specific types of disputes). Where the clause is broad, as the Arbitration

Agreements are here, there is a heightened presumption of arbitrability such that "in the absence

of any express provision excluding a particular grievance from arbitration, we think only the

most forceful evidence of a purpose to exclude the claim from arbitration can prevail." AT&T

Tech., 475 U.S. at 650 (citations omitted); accord Collins & Aikman Products Co. v. Building

Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a

presumption that the claims are arbitrable").

There can be no genuine dispute here that Plaintiff's claims are governed by the Arbitration Agreements. The Arbitration Agreements extend to all claims, including claims based on statutory or regulatory provisions. (See Booth Decl., Ex. 1 at 15, Ex. 3 at 13; Grayot Decl., Ex. 1 at 16.). Plaintiff alleges that Citibank violated the TCPA and FCCPA, so the claim falls squarely within the broad scope of the Arbitration Agreements. In this regard, it is well settled that statutory claims are subject to arbitration just like any other claims. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) ("it is by now clear that statutory claims may be the subject of arbitration"); Mitsubishi Motors, 473 U.S. at 628 (by agreeing to arbitrate a statutory claim, a party "does not forgo the substantive rights afforded by the statute [but] submits to their resolution in an arbitral . . . forum."). The "duty [of the courts] to enforce arbitration agreements is not diminished when a party is bound by an agreement raises a claim founded on statutory rights." Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). Indeed, numerous courts have found TCPA and FCCPA claims to be arbitrable. See Cayanan, 928 F. Supp. 2d at 1198-99 (citing numerous cases); Lenkowski at *10-11.

Accordingly, because the Arbitration Agreements are valid and enforceable, and because the claims are encompassed within the Agreements, the Motion should be granted and this action should be sent to arbitration.

**B.     The Action Must Be Stayed Pending Arbitration.**

Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; see also Collins v. Burlington N. R. Co., 867 F.2d 542, 545 (9th Cir. 1989) (remanding case where district court failed to consider whether a stay was appropriate as a result of binding arbitration agreement). Accordingly, Citibank respectfully requests that this Court stay the

10

action against Citibank, pending completion of arbitration pursuant to the express terms of the Arbitration Agreements.

### IV.     CONCLUSION

For the foregoing reasons, Citibank respectfully requests that the Court grant this Motion and compel arbitration of Plaintiff's claim pursuant to the Arbitration Agreements governing Plaintiff's Accounts.  In addition, this Court should stay this action pending completion of arbitration proceedings.

### <u>COMPLIANCE WITH LOCAL RULE 7.1(A)(3)</u>

Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies that she has conferred with Plaintiff's counsel regarding the relief sought in this Motion, and that Plaintiff opposes the relief sought herein.

Dated:  July 24, 2018.                              Respectfully submitted,


By:     /s/ *Jessica D. Rabinowitz*
        Brian C. Frontino, Esq.
        Florida Bar No. 95200
        Jessica D. Rabinowitz, Esq.
        Florida Bar No. 106163
        STROOCK & STROOCK & LAVAN LLP
        200 South Biscayne Boulevard, Suite 3100
        Miami, Florida 33131
        Telephone:  (305) 358-9900
        Facsimile:  (305) 789-9302
        bfrontino@stroock.com;
        jrabinowitz@stroock.com;
        lacalendar@stroock.com

        Attorneys for Defendant
            *Citigroup, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via

the Court's CM/ECF system, this 24th day of July, 2018, upon the following counsel of record:

<u>**SERVICE LIST**</u>

Luis Ugas, Esq.
Loan Lawyers, LLC
2150 S. Andrews Avenue, 2nd floor
Fort Lauderdale, FL 33316
Telephone: (954) 523-4357
Facsimile: (954) 581-2786
luis@fight13.com
tony@fight13.com

*Counsel for Plaintiff*

/s/ *Jessica D. Rabinowitz*
Jessica D. Rabinowitz

MIA 31373669