UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60977-CIV-DIMITROULEAS

ROXANA UMANA,

    Plaintiff,

v.

CITIGROUP, INC.,

    Defendant.
_____/

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

THIS CAUSE is before the Court upon Defendant Citibank, N.A.'s ("Citibank") Motion to Compel Arbitration [DE 8] (the "Motion").  The Court has carefully considered the Motion, Plaintiff's Opposition [DE 13], Defendant's Reply [DE 16], and the record in this case, and is otherwise advised in the premises. For the reasons stated herein, the Court will grant the Motion to compel arbitration.

**I.**     **BACKGROUND**

On April 30, 2018, Plaintiff commenced this action against Defendant for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et. seq.*, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, *et. seq*. [DE 1]. Plaintiff alleges that Defendant violated the TCPA and FCCPA by making telephone calls to Plaintiff in relation to a debt Plaintiff owes to Defendant Citibank.

Plaintiff's claims relate to a debt consisting of three credit card accounts owned by Citibank (the "Accounts"). The Accounts are governed by credit card agreements (the "Card Agreements") containing written terms and conditions, which include (among other things) a choice of law provision and arbitration provision (the "Arbitration Agreements"). Citibank

provided the Card Agreements to Plaintiff. (*See* Booth Decl. [DE 8-1] ¶¶ 6, 9; Grayot Decl. [DE 8-2] ¶ 6.)

The Arbitration Agreements state, in pertinent part, that "disputes may be resolved by binding arbitration" and that "if arbitration is chosen by any party, neither you nor [Citibank] will have the right to litigate that Claim in court or have a jury trial on that Claim." (Grayot Decl. [DE 8-2], Ex. 1 at 16; Booth Decl. [DE 8-1], Ex. 1 at 15 & Ex. 3 at 13.) The Arbitration Agreements explain that "[e]xcept as stated below [in the agreement], all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law . . . ." *Id.* The Card Agreements specify that South Dakota law will govern the terms and enforcement of the Agreements and that the Agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et. seq. See id.* at p. 7.

After opening the Accounts, Plaintiff used the three credit cards. (*See* Booth Decl. [DE 8-1] ¶¶ 7, 11; Ex. 2& 4 to Booth Decl.; Grayot Decl. [DE 8-2] ¶ 7; Ex. 2 to Grayot Decl.).

Defendant now moves to enforce the Arbitration Agreements and compel arbitration. In response, Plaintiff does not deny that she applied for the Accounts, that she received the Arbitration Agreements, or that she used the Accounts. Instead, she argues that (1) Defendant has not proven that she initialed or signed the agreements and therefore Citibank cannot establish there was a "meeting of the minds" over the arbitration provision; (2) Defendant attaches only "exemplar" credit card agreements in support of its Motion and not the actual agreement received by Plaintiff; and (3) the Arbitration Agreements are unconscionable.

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") places arbitration agreements on equal footing with all other contracts and reflects a "liberal federal policy favoring arbitration." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (internal quotations & citations omitted).  Section 2 of the FAA provides that written arbitration agreements in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "Consistent with the FAA's text, courts must rigorously enforce arbitration agreements according to their terms."  *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329–30 (11th Cir. 2014) (internal quotations & citations omitted).  Section 4 of the FAA allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to request the court to order arbitration "in the manner provided for in such agreement."  9 U.S.C. § 4.  Section 3 mandates that when a court concludes an issue is "referable to arbitration under an agreement in writing for such arbitration" the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

The determination of whether a dispute is arbitrable under the Federal Arbitration Act ("FAA") consists of two prongs: "(1) whether the parties agreed to arbitrate the dispute," and (2) "whether 'legal constraints external to the parties' agreement foreclosed arbitration.'" *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (citation omitted). The second step concerns whether "Congress has clearly expressed an intention to preclude arbitration of [a] statutory claim." *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002).

An arbitration agreement governed by the FAA, like the Arbitration Agreement here, is presumed to be valid and enforceable. *See Palidino v. Avnet Computer Technologies, Inc.*, 134

F.3d 1054, 1057 (11th Cir. 1998) ("The FAA creates a presumption in favor of arbitrability"). Furthermore, the party resisting arbitration bears the burden of showing that the Arbitration Agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). The Court considers a motion to compel under a summary judgment-like standard and may decide the motion as a matter of law where there is no genuine dispute of fact. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) A dispute is not "genuine" if it is unsupported by the evidence; "conclusory allegations without specific supporting facts have no probative value." *Id.*

### III. DISCUSSION

Defendant moves to compel Plaintiff to arbitrate her claims. Defendant's Motion is supported by declarations and exhibits, including exemplars of the actual Card Agreements provided to Plaintiff and account statements proving Plaintiff's use of the cards. In response, Plaintiff does not dispute that she received the Arbitration Agreements or that she used the credit card accounts. She also does not provide any evidence to refute Defendant's submissions, relying on argument alone. *See Chastain v. Robinson- Humphrey Co.*, 957 F.2d 851, 855 (11th Cir. 1992) (explaining that a "party cannot place the making of an arbitration agreement in issue simply by opining that no agreement exists"). Instead, Plaintiff argues that Defendant has not met its burden of establishing that there was a meeting of the minds such that a valid agreement to arbitrate exists.

Whether an enforceable agreement to arbitrate exists is a matter of state contract law. *See Bazemore*, 827 F.3d at 1329; *Larsen v. Citibank, FSB*, 871 F.3d 1295, 1303 (11th Cir. 2017) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) ("[C]ourts generally . . . should apply ordinary state-law principles that govern the formation of contracts"

in determining whether the parties have agreed to arbitrate.). The Card Agreements contain a South Dakota choice of law provision and Plaintiff does not challenge the application of South Dakota law beyond her general argument that the Agreements as a whole are not valid. *See Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000) ("[I]t is incumbent upon the party seeking to avoid enforcement of the [choice of law] provision to show that the foreign law contravenes public policy of the forum jurisdiction.").

There is no genuine dispute in this case that Defendant mailed the Card Agreements to Plaintiff and that she used the Accounts. *See* Booth Decl. [DE 8-1] ¶¶ 6-11; Grayot Decl. [DE 8-2] ¶¶ 6-7.) Under South Dakota law, Plaintiff's use of the credit cards constitutes her acceptance of the Card Agreements' terms and creates a binding contract. *See* S.D. Codified Laws § 54-11-9 ("use of an accepted credit card . . . creates a binding contract between the card holder and the card issuer"); *Khaliquzzaman v. Equifax Info. Servs. LLC*, No. 17-CV-1450, 2018 WL 3825887, at *3 (E.D.N.Y. Aug. 10, 2018) (under South Dakota law, plaintiff was bound by the card agreements in light of his undisputed use of the cards); *Ackerberg v. Citicorp USA, Inc.*, No. C12-03484 SI, 2012 WL 4932618, *3 (N.D. Cal. Oct. 16, 2012) (enforcing Citibank's arbitration agreement where plaintiff failed to opt-out and subsequently used the account); *see also Bazemore*, 827 F.3d at 1332 ("[C]ourts routinely enforce unsigned service contracts—including credit card contracts—where the contract is sent to a recipient who thereafter demonstrates his or her assent to its terms by using the service provided."); *Krutchik v. Chase Bank USA, N.A.*, 531 F. Supp. 2d 1359, 1365 (S.D. Fla. 2008) (failure to follow procedure to opt out and continued use of credit card constituted assent to terms of the cardmember agreement). Plaintiff used the Accounts and, as such, agreed to the terms of the Card Agreements.

Plaintiff's argument that the Card Agreements attached to Defendant's Motion are merely

5

exemplars is also unavailing. Courts have concluded that exemplar card accounts are sufficient to compel arbitration. *See, e.g., Lenkowski v. Citibank, N.A.*, No. 8:16-cv-03472-CEH-AAS, ECF No. 24 at 8 (M.D. Fla. April 18, 2017) (noting that "numerous jurisdictions have compelled arbitration based on exemplar arbitration agreements" and compelling arbitration)(citing *Carr v. Citibank, N.A.,* No. 15-cv-6993 (SAS), 2015 WL 9598797, at *2 (S.D.N.Y. Dec. 23, 2015) (holding that exemplar arbitration agreement for a credit card account was enforceable, even despite plaintiff's denial of receipt)); *Drozdowski v. Citibank, Inc.*, No. 2:15-cv-2786-STA-cgc, 2016 WL 4544543 (W.D. Tenn. Aug. 31, 2016).  Moreover, the exemplar agreements submitted here are the same form of agreement provided to Plaintiff and reflect the exact terms of the Arbitration Agreements contained therein. (*See generally* Booth Decl. [DE 8-1]; Grayot Decl. [DE 8-2].) *Cf. Bazemore*, 827 F.3d 1325 (affirming denial of motion to compel arbitration where there was uncertainty over the exact terms of the agreements provided to the plaintiff).

Finally, the Court rejects Plaintiff's argument that the Arbitration Agreements are unconscionable. Plaintiff had the option to opt out of the Arbitration Agreements and did not do so. She also continued to use the credit cards after opening the Accounts, demonstrating her assent to the Card Agreements' terms.

**IV.     CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Compel Arbitration [DE 8] is **GRANTED**.
2. This case is **STAYED** pending the completion of the arbitration proceedings.
3. The Clerk is directed to **CLOSE** this case for administrative purposes and **DENY** any pending motions as moot.

4.  The parties shall file status reports as to the status of the arbitration on or before February 3, 2019 and every ninety (90) days thereafter.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 5th day of November, 2018.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:
All counsel of record